UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION  PLAINTIFF

v.  CIVIL ACTION NO. 3:06CV-353-S

WHITE LODGING SERVICES CORP.  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on motion of the defendant, White Lodging Services Corp. ("White Lodging"), for summary judgment (DN 46) in this religious discrimination action brought by the Equal Employment Opportunity Commission ("EEOC").

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

This action arose from an incident which occurred at the Louisville Marriott Downtown Hotel (the "hotel" or "Marriott") in Louisville, Kentucky, on May 21, 2005. The hotel is owned by Kentucky Convention Hotel Partners, LLC[1] and managed by White Lodging Services Corporation ("White Lodging"). White Lodging, in turn, contracted with Hospitality Staffing Solutions, LLC ("HSS") to provide White Lodging with applicants for the hotel's housekeeping staff. The contract between White Lodging and HSS provided that HSS would

> recruit, interview, select, hire, and assign employees who, in [HSS's] judgment, are best qualified to perform the services [required by White Lodging]...The employees assigned to the Hotels under this Agreement shall remain employees of [HSS].

It is undisputed that on May 21, 2005, an HSS assistant manager, Veronica Stessens, brought four Somali women of the Muslim faith (the "applicants") to the housekeeping department of the hotel to interview for available housekeeping positions. The women, Fatuma Mahdi, Nurta Muya, Hawa Issa, and Sangabo A. Fayi, had been hired by HSS for placement as housekeepers in facilities with whom HSS had contracts. They were required, however, to interview for employment at the Marriott prior to placement, and the director of housekeeping retained the right to approve or disapprove applicants for positions in the hotel.

When they arrived with Stessens, each women wore a hijab,[2] also referred to by the parties as a head scarf, in accordance with Muslim practice. The Marriott's Employee Appearance Standards (also referred to herein as the "dress code") did not permit hats to be worn unless part of the uniform. However, exceptions had been made in the past to accommodate "challenges"[3] that were brought to the attention of management.

---

[1] KCHP was dismissed from the case by order entered May 22, 2007.

[2] The traditional covering for the hair and neck that is worn by Muslim women. *Merriam-Webster OnLine.*

[3] "Challenges" was the term used by the director of housekeeping when referring to various personal and employment issues of his staff. Payne depo., p. 177.

Stessens sought to present the women for interviews with the director of the housekeeping department, Donald Payne[4]. Stessens presented herself at his office. He could see the women standing in the hallway through his office window. Payne asked Stessens whether the women would have a problem taking their head scarves off. Stessens then asked Mahdi whether they could remove their head scarves. She replied that it was "impossible."[5] Stessens then communicated this to Payne who did not interview the women. The applicants were present in the housekeeping department sitting or standing in the hallway for a number of hours. They then left with Stessens who told them that they would not be working at the Marriott. HSS continued to bring other applicants for employment to the Marriott housekeeping department, and White Lodging continued to accept these applicants for employment. None were Muslim women wearing hijabs, however.

There was some difficulty in communication among the individuals involved in the incident. Stessens was a native Spanish speaker. She communicated with Payne in English. She did not speak English well. The women spoke May May,[6] a dialect spoken in some areas of Somalia, and spoke very little English. Stessens posed Payne's question to Mahdi, the woman who spoke the best English of the four. Mahdi recounted in her deposition that she had explained their religious practice in wearing the hijab, that they wanted to work, but that they could not remove their head scarves to do so.

---

[4] It appears that Payne held the title of Assistant Director at that time. There was no Director. Payne was in charge of the department, assuming the duties of the Director, and answered directly to the Resident Manager.

[5] There is a dispute of fact concerning whether and to what extent Mahdi explained the reason for the impossibility, whether Stessens understood and grasped the significance of the situation, and whether she conveyed any more than "it is impossible" when she returned to Payne's office with the answer to his question. This is not fatal to the plaintiffs' *prima facie* case, however. White Lodging recites the evidence that Payne asked Stessens whether the women had a problem removing their scarves and that he was told that it was "impossible." This evidence is sufficient without expansion for the plaintiffs to overcome summary judgment.

[6] Also Maay Maay. UNHCR/Refworld, www.unhcr.org

I.

Under Title VII of the Civil Rights Act, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees...and any agent of such person." 42 U.S.C. § 2000e(b). White Lodging contends that it was not the employer of the applicants, for purposes of their claim of religious discrimination. Rather White Lodging urges that HSS employed the applicants and that therefore White Lodging can have no liability for religious discrimination under Title VII.

The contract between HSS and White Lodging established the responsibilities taken on by HSS in providing staffing for the Marriott housekeeping department. It is clear that under the agreement HSS remained the direct employer of the applicants. Marriott essentially contracted out its human resources functions,[7] leaving hiring and payroll duties to HSS. In light of this arrangement, White Lodging urges that the contract with HSS insulated it from liability for alleged civil rights violations under Title VII.

We conclude, however, that further analysis yields a different conclusion. Courts have recognized "joint employers" where business entities are "in fact separate but... *share* or co-determine those matters governing the essential terms and conditions of employment." That is, "while contracting in good faith with an otherwise independent company, [one employer] has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993, n. 4 (6th Cir. 1997), *quoting NLRB v. Browning-Ferris*, 691 F.2d 1117, 1123 (3d Cir. 1982); *Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985). In *Equal Employment Opportunity Commission v. Regency Windsor Management Co.*, 862 F.Supp. 189, 191 (W.D. Mich. 1994), the court stated that "[w]hether [one entity] exercised sufficient control over employees to constitute

---

[7]White Lodging did have some of its own employees on staff, but, for the most part, HSS provided the housekeepers for the Marriott hotel.

a joint employer is a factual determination requiring the Court to consider such factors as authority to hire, fire and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities. [citation omitted]." In that case, the court found that while [one entity] was clearly the direct employer, there were genuine issues of material fact precluding summary judgment concerning whether [the other entity] exercised sufficient control to be deemed a joint employer.

In the case before us, there are certain areas which were clearly delineated as the province of each entity. HSS, the direct employer, controlled the compensation and terms of employment, while White Lodging controlled the work rules, conditions of employment, issuance of work assignments, instructions, and supervision of day-to-day activities. What one controlled the other did not, *except* with respect to the placement of employees at the hotel which necessarily involved the involvement of *both* entities.

The facts concerning the various functions is undisputed. HSS hired housekeeping applicants for placement at various hotels. With respect to housekeeping positions at the Marriott, White Lodging retained the ultimate decision-making authority in filling those positions. White Lodging required the applicants recommended by HSS to interview prior to being offered employment at the Marriott. HSS' pre-screened applicants were ultimately accepted or rejected by White Lodging for employment. In other words, despite the fact that the applicants were hired by HSS to fill available housekeeping positions, their ability to work as housekeepers at the Marriott hotel was controlled by White Lodging. Thus, HSS was the direct employer of the applicants, but White Lodging retained sufficient control with respect to the hiring of housekeepers to be found to be a joint employer in this endeavor with HSS.

Additionally, we find the reasoning in *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870 (6th Cir. 1991) to be applicable:

> Further, we have repeatedly said that "Title VII of the Civil Rights Act should not be construed narrowly." *Tipler v. E.I. du Pont de Nemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971). In this spirit, several courts have held that Title VII does not require a formal employment relationship between the plaintiff and defendant. Rather, a plaintiff is protected if the defendant is one "who significantly affects access of any individual to employment opportunities." *Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 422-25 (7th Cir. 1986)(doctor stated a claim under Title VII when hospital denied staff privileges even though doctor was not an employee of the hospital)...In its *Sibley Mem. Hosp.* opinion, the [D.C. Circuit] court began by pointing out that "The Supreme Court has said that the Congressional objective in Title VII is 'plaint from the language of the statute,' and that it is 'to achieve *equality of employment opportunities*[.]'" *Id.* at 1340-41 (emphasis original)(quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1969)).

Again, in the case before us, four applicants presented by HSS for employment in available positions at the Marriott. They were not afforded interviews by White Lodging, for whatever reason. They were denied hire for this work. We find specious White Lodging's argument that it did not interfere with the applicants' employment opportunities because HSS successfully placed them in other positions. White Lodging does not deny that HSS presented the applicants for employment, but they were not interviewed by White Lodging for the positions. It is irrelevant that they later attaned employment at a property over which White Lodging had no control. The interference, if any occurred, was with HSS's ability to place its applicants in available positions at the Marriott.

Based upon the foregoing analysis, we conclude that White Lodging has failed to establish that it was not the Title VII "employer," and thus its motion for summary judgment on that ground will be denied.

## II.

White Lodging contends that the EEOC has failed to establish a *prima facie* case of religious accommodation discrimination. The court disagrees with White Lodging's assessment.

Title VII bars "discriminat[ion] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's religion..." 42 U.S.C. § 2000e-2. "Religion" includes "all aspects of religious observance and practice, as well as belief,

unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's...religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

In the Sixth Circuit, the plaintiff bears the initial burden to establish a *prima facie* case of religious discrimination by showing that

> 1. the employee holds a sincere religious belief that conflicts with an employment requirement;
>
> 2. the employee has informed the employer of the conflict;
>
> 3. the employee was discharged or disciplined for failing to comply with the conflicting employment requirement.

*Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987). The third prong of the test in the context of a failure to hire is that "he or she was [not hired] for failure to comply with the conflicting requirement." *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1486 (10th Cir. 1989).

White Lodging contends that there is no genuine issue of material fact and that it is entitled to summary judgment on the ground that Payne was not informed that there was a conflict between a religious belief of the applicants and an employment policy of the hotel. It also contends that Payne did not refuse to interview the applicants, but that Stessens left with the women before he could do so. We will address these contentions in turn. The court finds that a genuine issue of material fact exists with respect to both of White Lodging's contentions.

A.

There are genuine issues of material fact concerning many of the details of what transpired on the morning the four applicants were brought to the Marriott housekeeping department. However, the court finds based upon the undisputed record evidence that a reasonable jury could conclude that Payne knew that the women wanted to work at the Marriott and that he also knew that their religious belief made it impossible for them to remove their head scarves in order to comply with the dress code for employment.

We find that despite the language difficulty, a reasonable jury could find that a conflict was apparent, as the applicants refused to uncover their heads in order to comply with the "no hats" policy at the Marriott. They wore the hijab in observance of their faith. Payne saw these women in their head scarves, and asked whether they would have a problem removing them. Payne testified that he was familiar with the hijab and its significance to Muslim women. He gained this knowledge through prior conversations with a female Muslim employee who wore a hijab when not working at the hotel. Payne testified that despite the religious significance to this particular employee, she did not feel the need to wear her head scarf when on duty at the hotel. Payne stated that this was the source of his expectation that removal of the hijab in compliance with the dress code would not pose a problem.

A rational jury could infer from Payne's question that he recognized a potential conflict. Payne did not suggest that the head scarves appeared to be anything other than hijabs. He also testified that these women were apparently from another country. Rather, he urges that his experience had been that the removal of the hijab to meet the uniform requirement would not be problematic. However, the very fact that he posed the question when he knew that the applicants were there to work in available housekeeping positions could reasonably be viewed to evidence knowledge and awareness. When the applicants responded that it was "impossible" to remove their head scarves to work, any question that a conflict existed was arguably dispelled.[8] Rather than addressing the conflict, the applicants were not interviewed.

White Lodging urges that Payne had no obligation to ask any questions nor should he have presumed that the women sought an accommodation which would have permitted them to work at the Marriott. He testified that he did not know, nor did he inquire, what HSS had discussed with the applicants. To take such a position is to bury one's head in the sand. HSS obviously sought to have

---

[8]White Lodging does not dispute that the women held a sincere religious belief which precluded their removal of their head scarves to work.

these women employed at the Marriott, as HSS brought them to Payne for interviews. Once the conflict became apparent, a reasonable jury could conclude that Payne could be expected to address the matter, as he was wholly in his control of whether interviews would take place.

White Lodging notes that Stessens did not articulate the specifics of the religious conflict nor specifically request an accommodation so that the women could work.[9] It also notes that the women themselves did not ask him for an accommodation. However, the women did not have the ability to address Payne personally. Indeed, they were not afforded interviews at all. The fact that Stessens was arguably not an effective advocate on their behalf does not relieve Payne of his responsibility to consider whether applicants brought for employment could be afforded reasonable accommodation of their religious practice if such religious practice in conflict with an employment policy was made known to him.

Payne must only be shown to have been put on notice of the conflict and of the desire for an accommodation, which a reasonable jury could conclude was evident in this case. While the law does not require that a potential employer divine the existence of a conflict or discern whether an accommodation is desired, there is no magic incantation required to put an employer on notice either. It would be contrary to the purpose of the statute to permit a potential employer to close his eyes to that which is obvious in favor of a rule requiring particular verbiage to trigger constitutional protection. Indeed, we know of no such an "abracadabra" rule. The cases cited by White Lodging concerning the failure to request an accommodation are quite different on their facts from the case at bar. In one case, an over-the-road truck driver refused to take "sleeper runs" with female drivers, as he claimed that his religious beliefs precluded this form of travel (non-stop travel in a tractor with a sleeper compartment) with a female to whom he was not married. While he apparently explained his basis for declining the runs after they had been assigned to him, he did not indicate "no sleeper

---

[9]EEOC disputes this interpretation of the evidence.

runs" in his work request nor did he seek an accommodation until after he was listed as a "voluntary quit" for declining the runs assigned with female drivers. *See,* 285 F.2d at 518. In another case, a medical resident apparently suffering from depression did not request an accommodation for his purported disability until after receiving poor evaluations and being notified of his dismissal from the residency program. *See*, 268 F.3d at 319.

These cases stand in contrast to the facts alleged herein where the accommodation necessary to offer the applicants employment could reasonably be found to have been singular and self-evident. In *Ansonia Bd. Of Education v. Philbrook*, 479 U.S.60, 69, 107 S. Ct. 367, 372, 93 L.Ed.2d 305 (1986), the Supreme Court stated

> The legislative history of § 701(j), as we noted in *Hardison, supra*, 432 U.S. at 74-75, and n. 9, 97 S.Ct. at 2271-2272, and n. 9, is of little help in defining the employer's accommodation obligation. To the extent it provides any indication of congressional intent, however, we think that the history supports our conclusion. Senator Randolph, the sponsor of the amendment that became § 701(j), expressed his hope that accommodation would be made with "flexibility" and "a desire to achieve an adjustment." 118 Cong.Rec. 706 (1972). Consistent with these goals, courts have noted that "bilateral cooperation is appropriate in a search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Brenner v. Diagnostic Center Hospital*, 671 F.2d 141, 145-146 (CA5 1982). See also *American Postal Workers, supra,* at 777.

The civil rights statutes have been applied liberally with the goal of furthering the purposes for which they were enacted. *Ansonia Bd. of Education, supra.* We find under the peculiar facts of this case that a reasonable jury could conclude that (1) Payne was aware of the applicant's desire to work at the Marriott by their presence for interviews with the HSS assistant manager, and (2) Payne was aware of the fact that their religious practice prevented them from complying with the dress code by his prior knowledge concerning Muslim dress, the applicant's physical appearance, and their answer of "impossible" to his inquiry about their head scarves. Thus the ball was in his court, so to speak, as it would be reasonable to conclude that he was made aware of the conflict and the need for an accommodation.

White Lodging urges that whatever Payne may have known, he did *not* appreciate the religious significance of the women's refusal to remove their head scarves. We find however, that, based on his familiarity with the hijab and his question whether the women would have a problem removing their scarves to work, a reasonable jury could find that he was aware of its religious significance. Further, the conflict was arguably made crystal clear when his question was met with a purportedly unanticipated response. As noted previously, at that point Payne controlled whether the conflict would be addressed. The applicants were not been given the opportunity to speak to him concerning their desire to work. They were not interviewed. The course of events was within Payne's control.

B.

The court finds that a genuine issue of material fact exists with respect whether Payne declined to interview the applicants and thus did not hire them for failing to agree to remove their scarves for work.

Payne urges that Stessens took the women away before he was able to meet with them. He testified that Stessens was unsure what to do when the issue over the head scarves surfaced, as she was under the impression that the women had agreed to wear uniforms. Stessens testified that she had no training in matters of employment discrimination and accommodation. She also testified that the language barrier was problematic. On the other hand, Payne testified that he had had some training in the area of discrimination in employment. He had worked in the hotel industry for a number of years prior to his employment at the Marriott. Thus Payne was apparently the most knowledgeable individual and best equipped to handle the situation. Payne testified that the applicants we "whisked away" by Stessens. However, Stessens testified that the housekeeping department was very busy on the morning in question. She stated that the applicants were made to wait in the hallway for hours. She stated that she explained what she had been told by the

applicants, but that Payne did not speak to them or offer them an interview. A genuine issue of material fact thus exists with respect to what occurred after Stessens spoke with Payne for a second time and told him that removal of the head scarves was impossible. In any event, this has no impact on the plaintiffs' ability to establish a *prima facie* case.

Conclusion

We conclude based upon the foregoing analysis that EEOC has shown a *prima facie* case of religious discrimination and that White Lodging has failed to establish entitlement to summary judgment.

Therefore, motion having been made and for the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiff, Equal Employment Opportunity Commission, for leave to file a surreply (DN 55) is **GRANTED**, and the motion of the defendant, White Lodging Services Corp., for summary judgment (DN 46) is **DENIED.**

**IT IS SO ORDERED.**